*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-330

JULY TERM, 2014

| | |
|---|---|
| In re Stanley Mayo | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Civil Division |
| | } |
| | } DOCKET NO. S1336-09 Cnc |
| | |
| | Trial Judge: Geoffrey W. Crawford |
| | Helen M. Toor |

In the above-entitled cause, the Clerk will enter:

Petitioner appeals the superior court's orders dismissing his petition for post-conviction relief (PCR). We affirm.

In 2005, petitioner was convicted of aggravated assault and being a habitual offender. He was later sentenced to a term of 25 to 100 years. This Court affirmed the convictions, rejecting several arguments that petitioner raised on appeal, including that the trial court violated his confrontation and due process rights by quashing his subpoena to obtain recordings of jailhouse telephone conversations of the State's chief witness. State v. Mayo, 2008 VT 2, ¶¶ 7-10, 183 Vt. 113.

Petitioner filed his PCR petition in October 2009, raising several claims, including that: (1) the trial court violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963) by quashing his subpoena seeking the jailhouse telephone conversations; and (2) his trial counsel was ineffective for failing to convey to him a plea bargain offer by the State that contemplated a sentence of fourteen to fifteen years. In a January 21, 2011 decision, the trial court granted the State's motion for summary judgment on all counts. The court ruled that the Brady claim was functionally identical to the one raised on direct appeal and thus was procedurally barred in the PCR proceedings. The court ruled further that petitioner could not prevail on the merits of the claim because he failed to present any basis for the court to allow the subpoena or even to review the conversation in camera. As for the ineffective-assistance-of-counsel claim, the court ruled in favor of the State as a matter of law because petitioner failed to allege that he would have accepted the plea bargain offer if it had been conveyed to him.

Two months later, petitioner filed a motion to alter or amend the judgment and attached a new affidavit stating that he would have accepted the offer had it been conveyed to him. The superior court, with a different judge sitting, concluded that the new affidavit cured the defect in petitioner's plea-bargain claim cited by the previous judge. Accordingly, the court reopened the case and scheduled an evidentiary hearing on petitioner's claim that his trial attorney was ineffective for not conveying a plea bargain

offered by the prosecutor. The superior court then granted the State's motion for permission to appeal its decision to reopen the case, but this Court dismissed the appeal as improvidently granted.

The PCR court held a hearing on the reopened claim over two days in February 2013. Petitioner, his trial counsel, and petitioner's expert testified on behalf of petitioner. The prosecuting attorney from the underlying trial testified on behalf of the State. Following the hearing, the PCR court entered judgment for the State, finding it very unlikely that the prosecutor ever made the plea bargain offer alleged by petitioner or that petitioner would have accepted such an offer. In response to petitioner's motion to alter or amend the judgment, the court retracted a finding underlying its ultimate finding of no prejudice—that petitioner had rejected an earlier offer of fifteen to twenty-five years—but nonetheless denied the motion, reiterating its findings that petitioner was convinced of his innocence and would have refused the offer he claimed his attorney had failed to convey to him.

On appeal, petitioner argues that: (1) he proved by a preponderance of the evidence that the prosecutor offered him a plea deal of fourteen to fifteen years, his attorney failed to convey to him the alleged offer and he would have accepted the offer had it been conveyed to him; and (2) the superior court erred by granting the State summary judgment on his claim that he was denied due process when the trial court quashed his subpoena seeking the jailhouse telephone conversations of a State's witness.[1]

A petitioner seeking post-conviction relief based on a claim of ineffective assistance of counsel must overcome "high hurdles," including the "strong presumption in the reliability of the underlying proceedings." In re Plante, 171 Vt. 310, 313 (2000). To demonstrate ineffective assistance of counsel, a PCR petitioner must prove by a preponderance of the evidence that counsel's performance "fell below an objective standard of performance informed by prevailing professional norms" and that "there is a reasonable probability that, but for [the attorney's] unprofessional errors, the proceedings against [petitioner] would have turned out differently." Id. "This Court will uphold the superior court's judgment on appeal if there is any credible evidence to support the court's findings and its conclusions follow from those findings." Id.

"The right to effective counsel is violated when an attorney fails to inform a defendant of a plea offer or when the attorney's incompetence causes a defendant to proceed to trial rather than plead guilty." Id. "Defense counsel has a duty to communicate to a client not only the terms of a plea bargain offer, but also its relative merits compared to the client's chances of success at trial." State v. Bristol, 159 Vt. 334, 338 (1992). In this case, the prejudice prong of proving ineffective assistance of counsel required petitioner to show a reasonable probability that he would have accepted the plea bargain offer if it had been conveyed to him, United States v. Brown, 623 F.3d 104, 112 (2d Cir.

---

[1] The State cross-appeals the superior court's decision to reopen petitioner's PCR claim concerning his trial attorney's alleged failure to convey a plea offer to him after initially granting summary judgment to the State. Because we affirm the trial court's rejection of petitioner's claims on the merits concerning this issue, we need not address the State's cross-appeal.

2

2010), and that the trial court would have approved the plea bargain, Bristol, 159 Vt. at 338-39.

With respect to the purported plea offer, petitioner challenges both the trial court's finding that no such offer was likely made, and its finding that even if the prosecution had made such an offer, petitioner would not have accepted it. Either one of these findings alone supports the trial court's denial of post-conviction relief on the basis of the alleged unconveyed plea offer. We will uphold the trial court's findings on these issues if they are supported by substantial evidence in the record and are not clearly erroneous. Id. at 336-37.

In the PCR hearing, petitioner testified that he became more interested in a plea bargain after the trial court denied an important pretrial motion and quashed his subpoena seeking the jailhouse telephone conversations. He testified that he asked his trial attorney more than once before trial whether the State had made any offers to resolve his case, but his attorney told him that the prosecutor did not want to settle because he was unhappy over the resolution of a previous case involving petitioner. He also testified that following the guilty verdict, when he asked his trial attorney why he did not get him a plea deal, his attorney said, to his surprise, that he could have gotten him fourteen to fifteen years. (In his initial motion for post-conviction relief, petitioner had asserted that the unconveyed offer was for a fourteen year maximum, allowing him to argue to the court for less.)

Petitioner's defense attorney testified that the prosecutor had offered fourteen to fifteen years for a guilty plea, that he (the defense attorney) failed to convey the offer to petitioner before trial, and that petitioner did act surprised when defense counsel told him after trial that he could have gotten him fourteen to fifteen years. The prosecutor testified that he did not recall any offers beyond his initial written offer of fifteen to twenty-five years provided at petitioner's arraignment. He said that he could have made such an offer, but he doubted it because fourteen years was much lower than he was looking for as a minimum. He also testified that he usually rounded his maximum sentences in increments of five.

The PCR court found that "it is very unlikely that [the prosecutor] ever made an offer of fourteen years—either as a maximum sentence, as a minimum sentence, or as part of a minimum/maximum combination." The court concluded that the likelihood was that the prosecution's initial written offer remained at fifteen to twenty-five years and that through sympathy with his client, defense counsel had come to believe in a lower offer that was never made. The court pointed to two specific factors in support of its finding. First, the court noted that the defense attorney's recollection of the plea offer had improved over time, and that at the time of his deposition he recalled only "the number fourteen years" as a way to resolve the case, and could not recall whether the fourteen was a minimum or a maximum. Defense counsel testified at the PCR hearing that a conversation with petitioner "jogged [his] memory" as to exactly what sentence was offered. Second, the court credited the prosecutor's testimony that the claimed plea offer would have been uncharacteristic, because of his tendency to use increments of five in his plea offers, and unduly low given the prosecutor's views of petitioner's dangerousness.

The trial court's finding that the purported offer likely never happened is supported by the trial court's analysis, and by competent evidence in the record. It was within the

3

province of the superior court to determine the credibility of witnesses and to weigh the evidence. In re Calderon, 2003 VT 94, ¶ 13, 176 Vt. 532 (mem.). We conclude that the trial court's findings were supported by sufficient evidence and were not clearly erroneous. Because we conclude that the PCR court's finding that the plea offer never happened was supported by sufficient evidence, and because that finding is sufficient to support the PCR court's denial of post-conviction relief on account of a claimed unconveyed plea offer, we need not reach petitioner's second argument that the trial court erred in concluding that he would not have accepted the claimed offer even if it had been made.

Petitioner's other argument is that the superior court erred in granting the State's motion for summary judgment with respect to his claim that the trial court deprived him of due process by quashing a subpoena for jailhouse telephone conversations involving the State's chief witness. The PCR court ruled that the claim failed because: (1) it was functionally the same claim that was rejected by this Court on petitioner's direct appeal from the conviction, see In re Stewart, 140 Vt. 351, 361 (1981) ("Post-conviction relief is not a substitute for appeal."); and (2) the original trial court's decision to quash the subpoena was supported by defendant's failure to provide a basis for allowing the subpoena, and any subsequent discovery of potentially exculpatory evidence did not implicate the trial court's earlier decision, particularly because petitioner was given an opportunity to discover the potentially exculpatory information.

We agree with the PCR court's analysis. On direct appeal of his conviction, petitioner argued that the trial court's quashing of his subpoena violated his confrontation and due process rights. We held that: (1) the confrontation right is a trial right not implicated by this pre-trial order quashing a subpoena; (2) petitioner failed to raise the due process claim at trial; and (3) there was no plain error with respect to the due process claim. Mayo, 2008 VT 2, ¶¶ 7-10. On the latter point, we noted that, in seeking to subpoena the recordings of jailhouse telephone conversations, petitioner "offered no specific evidence as to the contents of the particular conversations requested, nor any indication why the evidence he sought would be found in the telephone records." Id. ¶ 10. As we pointed out, the trial court quashed the subpoena because petitioner did not have "the slightest idea of the content of these conversations." Id. (quotation omitted). We pointed out that, the trial court gave petitioner an opportunity to demonstrate that the conversations were material to his trial by ordering the Department of Corrections to release a call log containing a full listing of the telephone calls that the State's witness had made while in jail, including the names and telephone numbers of the persons listed on the log, and instructing petitioner to telephone the individuals listed in the log to determine whether they had in fact discussed the case with the witness while he was incarcerated. Petitioner did not follow up on this information until more than a year after trial. Under these circumstances, we ruled that there was no plain error, given petitioner's failure to show that the conversation would reveal material information and the court's decision to give petitioner an opportunity to examine the call logs. Id. In short, as the superior court concluded, petitioner's due process claim was raised and rejected on direct appeal. The fact that petitioner subsequently obtained the conversations, which he claims contains

exculpatory information,[2] does not alter the fact that the trial court properly quashed the subpoena.

        <u>Affirmed</u>.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

---

      [2] Petitioner briefly cites one out-of-context statement from one of the recorded conversations and then directs the Court to examine the other conversations in his printed case. Read in context, the quoted statement is one in which the jailed State's witness tells a third person that the victim better not say that the witness owes him money or he will call up the State's Attorney and tell him that he lied about what happened. This statement does not necessarily demonstrate that the witness lied in testifying at trial as to his version of what happened; it could also be read as the witness saying he would lie about what really happened if the victim acted on a purported debt. Nor are statements in the other conversations cited by petitioner clearly exculpatory in nature. Most concern the witness complaining about prison conditions and threatening not to cooperate with the prosecutor if his demands were not met. Defense counsel at trial, both through argument and cross-examination, made the jury aware that the State's witness was seeking consideration from the prosecution for his testimony, and also pointed out the conflicts in the witness's various statements. On this record, petitioner's inability to present the telephone-conversation evidence at trial on account of the quashed subpoena and his failure to timely follow up to get more information, did not lead to the kind of fundamental error required for post-conviction relief. See <u>In re Harris</u>, 164 Vt. 628, 629 (1995) (mem.).